IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEVIN BURRELL, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. JKB-17-3329 |
| CAROL L. HARMON, *Warden* and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * | |

***

## MEMORANDUM

Petitioner Devin Burrell, who is represented by counsel, filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2005 convictions in the Circuit Court for Baltimore City, Maryland for second-degree murder and wearing or carrying a deadly weapon.[1] ECF No. 1. Respondents filed an Answer asserting that Burrell's Petition should be denied because his claims lack merit. ECF No. 4. Burrell did not reply.

The Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (holding that petitioner was not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons that follow, Burrell's Petition shall be denied and a certificate of appealability shall not issue.

---

[1] According to the Department of Public Safety & Correctional Services, Burrell is presently confined at Dorsey Run Correctional Facility, where the current warden is Carol L. Harmon. *See* http://www.dpscs.state.md.us/inmate/ (last visited Feb. 5, 2021). Therefore, the Clerk will be directed to amend the docket to name the proper Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (internal quotation marks and citations omitted) (stating that "in habeas challenges to present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held").

**Background**

On September 1, 2005, Burrell was convicted of second-degree murder and wearing or openly carrying a dangerous weapon. *See State v. Burrell*, Case No. 105045027 (Cir. Ct. for Balt. City) Docket Entries, ECF No. 4-1 at 1, 4. On December 29, 2005, he was sentenced to incarceration for a total of thirty-three years. *Id.* at 5; Sentencing Transcript, ECF No. 4-7 at 26-27.

On January 3, 2006, Burrell filed a notice of appeal in the Court of Special Appeals of Maryland, raising the following claims:

1. Did the trial court commit plain error when it instructed the jury that it could find Appellant guilty or not guilty of first-degree murder or guilty of second-degree murder?

2. Did the trial court err in failing to give a manslaughter instruction as requested by the defense?

3. Was the evidence sufficient to support Appellant's convictions?

*See Burrell v. State*, Case No. 2664, Sept. Term, 2005 (Ct. of Spec. App. Oct. 17, 2008), ECF No. 4-8 at 3. On October 17, 2008, the Court of Special Appeals affirmed Burrell's convictions, issuing its mandate on November 17, 2008. *See id.* at 1. Burrell sought further review in the Court of Appeals of Maryland, but his petition for writ of certiorari was denied on December 30, 2008. *Burrell v. State*, 962 A.2d 371 (Table) (2008).

On January 15, 2014, Burrell filed a petition for post-conviction relief in state circuit court,[2] raising the following arguments:

1. Mr. Burrell was denied his Sixth Amendment right to effective assistance of counsel when trial counsel left the courtroom during a portion of the *voir dire* of the jury and left Mr. Burrell without a lawyer at a critical stage of the proceedings.

---

[2] Burrell had filed a prior petition for post-conviction relief on September 11, 2009, which he withdrew, without prejudice, on July 15, 2013. *See* ECF No. 4-1 at 8, 12.

2

2. The trial court erred and defense counsel was ineffective for not requesting a proper waiver from petitioner of the right to counsel.

3. Petitioner was denied the effective assistance of trial and appellate counsel who failed to challenge the trial court's error in allowing jurors to determine their bias.

4. Petitioner was denied the effective assistance of trial counsel who failed to object to the failure of the court to inform counsel of a communication from a juror and who failed to request the court to individually question the juror who informed the clerk that someone in his family had died and he may want to be excused.

5. Trial counsel was ineffective for failing to object to the court's failure to instruct the jury on involuntary manslaughter after agreeing to do so and in failing to ensure that involuntary manslaughter was on the verdict sheet; appellate counsel failed to properly raise the issue on appeal.

6. Petitioner was denied the effective assistance of appellate counsel who failed to challenge the improper instruction given to the jury after it reached a deadlock.

7. The cumulative effect of the errors delineated above denied Mr. Burrell his constitutional right to the effective assistance of counsel as well as the right to a fair trial and sentencing.

Petition for Post Conviction Relief, ECF No. 4-9 at 11-31.

After a hearing on March 18, 2015, the post-conviction court denied Burrell's petition by memorandum opinion and order dated July 26, 2016. ECF No. 4-1 at 14; Post-Conviction Memorandum Opinion and Order, ECF No. 4-11. Burrell sought leave to appeal from this denial; however, the Court of Special Appeals summarily denied his application on August 29, 2017, and subsequently denied his motion for reconsideration, with the mandate issuing on November 7, 2017. *See* Application for Leave to Appeal, ECF No. 4-12; Mandate, ECF No. 4-13.

On November 14, 2017, Burrell filed his Petition in this Court. ECF No. 1. He claims that he was denied his Sixth Amendment right to effective assistance of counsel when his trial attorney left the courtroom during a portion of the *voir dire* without obtaining a waiver of counsel. *Id.* at 3-10. Burrell also asserts that he was denied the effective assistance of appellate counsel, who

failed to challenge the allegedly improper and coercive instruction given to the jury after it reached a deadlock. *Id.* at 10-12.

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted); *see also Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017); *White v. Woodall*, 572 U.S. 415, 420 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)) (explaining that a state prisoner must show a state-court ruling on the claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v.*

4

*Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citation omitted). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101 (emphasis and citation omitted).

**Analysis**

Burrell alleges ineffective assistance on the part of his trial and appellate attorneys. When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court explains that the "first prong sets a high bar." *Buck v. Davis*,

5

137 S.Ct. 759, 775 (2017). Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 669. A strong presumption of adequacy attaches to counsel's conduct—so strong, in fact, that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered "fundamentally unfair" by counsel's affirmative omissions or errors. *Id.* at 700. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice when the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-prong test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d

6

987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. In other words, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### I. *Trial Counsel*

Burrell first asserts that trial counsel rendered ineffective assistance when he left the courtroom during a portion of the *voir dire* without obtaining a waiver from Burrell. The trial transcript reflects the following:

> MS. PHELPS [PROSECUTOR]: While you're asking the next question, could I use the bathroom?
>
> THE COURT: Can you just wait?
>
> MS. PHELPS: Do you mind? I'll just --
>
> THE COURT: No.
>
> MR. DANEMAN [DEFENSE COUNSEL]: Is there a men's room --
>
> THE COURT: Oh, I see your point. I'll ask the three-part question while you're out.
>
> MS. PHELPS: Is that okay?
>
> MR. DANEMAN: Is there a men's room that I can use? In other words, I have an enlarged prostate --
>
> THE COURT: Are these jury rooms being used? I mean, the big one --
>
> THE SHERIFF: (Inaudible).
>
> THE COURT: How about ours?
>
> MALE VOICE: (Inaudible).
>
> THE COURT: Yeah, ours. Ours is the offered for the [sic] bathroom?
>
> MALE VOICE: Right.
>
> THE COURT: All right, I'll let you use that one.

7

MS. PHELPS: Okay.

THE COURT: That's the one that only has one (inaudible), isn't it?

MALE VOICE: I'm not sure.

MR. DANEMAN: I'll wait until she, ladies first and then I'll --

THE COURT: Well, we can simply pause while you go down the hall. Do you mind if I ask the question?

MR. DANEMAN: I don't mind. But you have us all stand up and --

THE COURT: No, it's a long, elaborate question. You'll see.

MR. DANEMAN: Okay. I'll stand down.

(Counsel and Defendant returned to the trial table and the following ensued).

Ladies and gentlemen, thank you for your patience. I've excused the lawyers solely because they wanted to attend to a personal matter.

This -- the next question -- they'll be back in just a few seconds, but we thought -- they said that we should proceed because this next question takes a little bit of time for me to communicate it and they know exactly what it is since they've heard it many times in the past.

This question does have three parts to it. Three parts. And I ask you not to respond to this question until I've asked you all three parts and only then.

And what I'm now going to do is to ask the first part which is whether you or anyone very close to you in your life has ever been convicted of a crime. That's only one part. Don't respond. Ever been convicted of a crime.

The second part, whether you or anyone close to you has ever been incarcerated, meaning detained, locked up, even if not convicted of a crime.

And the third part of the question is whether you or anyone close to you has ever been a victim of a crime.

Now we're not talking here about crimes that occurred thirty-five years ago when somebody bumped you on the elevator or something. We're talking about crimes that had an impact on you or someone close to you and that you remember and that might become part of your thinking, so to speak, as jurors causing you to

8

be biased one way or the other because of what happened to you or someone close to you whether it's a conviction, victimization or incarceration experience.

And, of course, and, therefore, I'm saying to you that if you're answering any one of those three questions yes and you believe that the crime or the incident or the occurrence that causes you to stand up is one that might influence your judgment in this case, or, and the or is very important, or what causes you to stand up involves any crime of violence whatsoever no matter how slight, no matter how egregious. In that situation, you must stand up.

All right, now if you're standing up, you're telling me, Judge, either I or someone close to me has been the victim of a crime, incarcerated, detained, or -- what am I missing? convicted -- and the crime that caused you to stand up or the experience that caused you to stand up is one that has an impact on you and has caused you to think, well, I just might be thinking about that rather than the evidence in the case and might cause you to become biased, or what caused you to stand up involves a crime or an incidence, an incident, excuse me, of violence. I don't care whether you believe it will affect you or not. If it involves violence of any degree you should be on your feet.

All right. Now, the next step in this process, the next step in this process is to form a line and we'll be talking to you individually. Now wait just a second, please. Wait just a second, please. We'll organize this. You'll listen to the courtroom clerk. After I have given you the first group of people to come forward and that would be those whose numbers fall between 462, and between that number, and 493. Between 462 and 493 you should come up to the front. Everyone else form in the back there in that aisle. And the clerk will be directing you as to where you should stand. He will follow a numerical order too. And you all can move up just a little bit closer to us. Right there.

And you might as well come up, Ma'am.

And we ask you, of course, to remain silent because of the same reason. This room is audio-visually recorded.

(Juror No. 464 approached the bench.)

THE COURT: Number and name?

JUROR NO. Geneva Jones, 464.

THE COURT: Okay, Ms. Jones, go ahead please. Tell us your experience. Why are you up here?

JUROR NO. 464: Yes. Yes. Yes. I have family members that are incarcerated now and it would have some impact on my judgment.

9

THE COURT: I'll excuse you, Ma'am.

JUROR NO. 464: And --

THE COURT: That's all right. That's okay.

    Remember, ladies and gentlemen -- sir. I want to make one more announcement and then you can go. I just want to remind everyone that we're now in that second phase. We're coming close to the second phase. I want to ask everyone who's excused to remain with us from now on. Okay? Even if I say excused up here, retake your seat.

JUROR NO. 464: Go back to my seat?

THE COURT: Yes. Thank you.

(Juror No. 464 exits the bench).

(Juror No. 477 approached the bench.)

THE COURT: Yes, Ma'am. Your number and name? Karma Burgess (phonetic).

THE COURT: Okay, Ms. Burgess. Dr. Burgess. Are you a psychologist?

JUROR NO. 477: Yes. Karma Burgess.

THE COURT: Okay Ms. Burgess. Dr. Burgess. Are you a psychologist?

JUROR NO. 477: Yes. I've been the victim of domestic violence from which I have a physical injury and which my life was often threatened[.]

THE COURT: Was there a weapon involved?

JUROR NO. 477: Yes.

THE COURT: A real weapon or --

JUROR NO. 477: I can't hear you.

THE COURT: A knife or a gun?

JUROR NO. 477: A knife.

THE COURT: All right. And was that person apprehended and justice done?

JUROR NO. 477: Yes.

THE COURT: So you can be fair in this case, can you not?

JUROR NO. 477: I'm not sure.

THE COURT: Why not?

JUROR NO. 477: I don't know.

THE COURT: When was this?

JUROR NO. 477: This was about five years ago.

THE COURT: Okay, I have to let you stay with me because you haven't convinced me. All right, thank you.

(Juror No. 477 exits the bench.)

(Juror No. 473 approached the bench.)

JUROR NO. 473: 473.

THE COURT: Yes, Ma'am, Mrs. Smith?

JUROR NO. 473: My son's father right now is doing six years right now for attempt murder and he didn't get a fair trial because they didn't have no evidence and they got a lot of impact on me because I'm working extra hours to take care of son.

THE COURT: I'm sure. I feel sorry for you. I feel sorry for your son too. I'll excuse you, Ma'am. Thank you very much.

(Juror No. 473 exited the bench.)

(Juror No. 466 approached the bench.)

THE COURT: Number and name?

JUROR NO. 466: 466. Kendra Johnson.

MR. DANEMAN: 4?

THE COURT: Kendra Johnson, 466.

Trial Transcript (Aug. 25, 2005), ECF No. 4-2 at 74-81.

11

At his post-conviction hearing, Burrell presented, as evidence of counsel's absence, the transcript from August 25, 2005, a DVD copy of the video recording of the proceedings, and affidavits from trial counsel and the post-conviction counsel's paralegal. *See* Post-Conviction Transcript (Mar. 18, 2015), ECF No. 4-10 at 5-9. Respondents note that in the video recording, Mr. Daneman, Burrell's counsel, appears on camera as the trial court says that the clerk "will follow a numerical order too" while lining up the prospective jurors. ECF No. 4 at 18 n.3 (citing ECF No. 4-2 at 78); *see also* ECF No. 4-10 at 24. In the trial counsel's affidavit, he stated that he "left the courtroom to use the bathroom" and that "[w]hen [he] returned to the courtroom, we continued with *voir dire* examination of the jury panel." *See* ECF No. 4 at 19.

The post-conviction court found that Burrell failed to establish that trial counsel was absent during a critical stage of the trial. ECF No. 4-11 at 8. As the exhibit affidavits and the transcript illustrated that counsel was present for all of the individual questioning at the bench, the court concluded that the facts did not lend themselves to the interpretation that "defense counsel was absent during a **critical stage** in the trial." *Id.* at 7 (emphasis in original). Moreover, the post-conviction court found that Burrell failed to demonstrate that a juror was actually biased and, thus, his "argument that the *voir dire* issue doomed his trial [was] mere speculation." *Id.* at 8.

The post-conviction court's findings are supported by the record and survive scrutiny. First, Burrell fails to show that defense counsel was absent during a critical part of *voir dire*. As Respondents note, Burrell has not demonstrated whether counsel was absent when the trial court asked the three-part question, or whether he was absent only when the court instructed the responding jurors as to how to line up. *See* ECF No. 4 at 18-19. Therefore, Burrell has not shown that trial counsel's performance fell below an objective standard of reasonableness.

In any event, Burrell has also failed to establish the prejudice prong of *Strickland*. Even assuming that trial counsel was deficient by being absent during *voir dire*, and thus failed to object to the question formulated by the trial court, Burrell has not demonstrated that he suffered any prejudice or that such an error rendered his trial fundamentally unfair. Indeed, Burrell has not shown that any member of the jury was unfairly biased or otherwise should have been disqualified from service. As such, the post-conviction court's denial of Burrell's claim was based on a reasonable application of *Strickland*.

## *II. Appellate Counsel*

Burrell's next claim is that his appellate counsel rendered ineffective assistance by not raising on appeal the issue of the trial court's instruction to the jury after it reached a deadlock. ECF No. 1 at 10. Specifically, Burrell contends that the trial court's instruction was "improper and coercive." *Id.* On this issue, the trial transcript reflects as follows:

> THE COURT: Thank you, ladies and gentlemen, and I understand from a note that we received from you that you perceive yourselves to be at a deadlock in your voting and -- I apologize.
>
> (There was a brief pause in the proceedings.)
>
> THE COURT: I apologize. In these situations certainly, first of all, I acknowledge, and I know I speak on behalf of the attorneys and the parties in the case, to say thank you for the good work and hard work you've put to it for two days now, not two full days but certainly a full day today and a significant part of yesterday, and also to note that you did take that break overnight that gives you -- hopefully gave you some breathing room and time to think.
>
> What I'd like to do at this point is remind you of a few things and then ask you to return to the jury room and consider what I've said and what I'm about to say, and it's really very simple and I think you already understand it because you've been diligent and dutiful in your work, and therefore you indicate you do understand that this is an important case and to the public and to of course the defendant, and that the duty of the judges, so to speak, is to reach a decision.
>
> That is what I am here for when the cases come before me and decisions have to be made by me. I'm here to make a decision. You are here to make a

decision. And we have found over time that the best course toward a good and honorable decision is to listen carefully to your own thoughts, give heed to your own analysis of the case, the evidence and the law, of course pay special attention to the views of your cojurors because you enter a jury room as jurors wearing -- without wearing a robe but as judges of the facts, and like any other judge you are obliged to reach your own decision based upon your own considerations of the evidence and the law, and your ultimate decision should not violate your own conscience.

As you get to that point you have a very strong duty to listen carefully to one another, be prepared to be influenced by the views of other people on the jury without surrendering of course your own judgment which you -- if you have reached that judgment in good conscience having considered carefully the law and the facts.

You will always be prepared to remember that it's 12 people. It's not 12 people arbitrarily, you know, just because 12 is a good round number. It's 12 people because it means that 12 people have been listening, and this jury have been very attentive listening to the case, listening to the witnesses, listening to the law, and sometimes one can get a different perspective by listening to the views of others who have heard the same facts and circumstances and law as you have, so that is what I think is a fair summary of your responsibility when you get to the stage where you are. What you call a deadlock might remain a deadlock, and this court will respect that.

That's all there is to that, but whether it's a final deadlock may well depend upon how you approach this [sic] next few minutes where you sit down and think through the thoughts that I've shared with you. Now before you go back I'm going to invite the lawyers to come forward if they wish.

(Counsel and the defendant approached the bench and the following ensued:)

MR. DANEMAN: Just for the record I would object.

Trial Transcript (Sept. 1, 2005), ECF 4-6 at 9-11.

Burrell presented this claim to the post-conviction court, which found that although the trial court "deviated from the ABA recommended *Allen*-type[3] instruction, these deviations were not in substance." ECF No. 4-11 at 11 (citing *Burnette v. State*, 280 Md. 88 (1977)). In rejecting

---

[3] *Allen v. United States*, 164 U.S. 492, 501-02 (1896) ("It certainly cannot be the law that each juror should not listen with deference to the arguments and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself.").

14

Burrell's claim, the post-conviction court concluded that "[a]t no point did [the trial court] encourage jurors to coerce each other, nor . . . state that the jury was required to reach a decision." *Id.*

The U.S. Court of Appeals for the Fourth Circuit has stated that, when reviewing an *Allen* charge for coerciveness, courts should consider:

> the charge in its entirety and in context; suggestions or threats that the jury would be kept until unanimity is reached; suggestions or commands that the jury must agree; indications that the trial court knew the numerical division of the jury; indications that the charge was directed at the minority; the length of deliberations following the charge; the total length of deliberations; whether the jury requested additional instruction; and other indications of coercion.

*Tucker v. Catoe*, 221 F.3d 600, 611 (4th Cir. 2000). "Establishing an error in the state court proceedings, however, is quite different than demonstrating an entitlement to federal habeas corpus relief." *Id.* at 612. To demonstrate the latter, a petitioner still must establish: "(1) that he was deprived of a federally guaranteed right, and (2) that the state [post-conviction] court's adjudication of his claim was unreasonable." *Id.* at 612-13.

Here, the Court does not find that the trial court's charge was coercive. The trial court did not suggest that jury deliberations would continue until unanimity was reached or that jurors must agree. Rather, the judge stated, "What you call a deadlock might remain a deadlock, and this court will respect that." ECF No. 4-6 at 11. Moreover, although the jurors had been deliberating for over one day, the trial court did not indicate that it knew the numerical division of the jury, nor was there an indication that the jury had requested additional instruction.

In light of this record, the post-conviction court's ruling survives scrutiny under 28 U.S.C. § 2254(d). In sum, there was no error committed by the trial court, and certainly no constitutional error of the sort that would warrant federal habeas relief.

## Conclusion

Burrell was not unconstitutionally denied the right to effective assistance of counsel. Having found no meritorious claim for relief, the Petition for Writ of Habeas Corpus shall be denied.

## Certificate of Appealability

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck*, 137 S.Ct. at 773. The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2). Burrell may still request that the U.S. Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.

Dated this 9 day of February, 2021.

FOR THE COURT:

_____
James K. Bredar
Chief Judge